IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DAMIAN APODACA,

    Plaintiff,

vs.	CV 14-648MCA/CG

THE BOARD OF COUNTY COMMISSIONERS
FOR CURRY COUNTY, NEW MEXICO, a political
Sub-division, et al.,

    Defendants.

## AMENDED MEMORANDUM OPINION AND ORDER

The Court's July 28, 2016 *Memorandum Opinion and Order* [Doc. 60] is withdrawn and this *Amended Memorandum Opinion and Order* substituted in its place.

This case is before the Court upon Defendants' *Motion for Summary Judgment* [Doc. 38].  The Court has considered the written submissions of the parties, the record in this case, and the applicable law, and is otherwise fully advised.

**Summary Judgment Standards**

Fed. R. Civ. P. 56(a) provides that "[a] party may move for summary judgment, identifying each claim or defense─or the part of each claim or defense─on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  As our Court of Appeals has succinctly stated:

> A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is

1

> "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented.

A*damson v. Multi Cmty. Diversified Serv., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998). "It is not [the court's] province at the summary judgment stage to weigh the evidence or to make credibility determinations." *Sanders v. Southwestern Bell Tel., L.P.*, 544 F.3d 1101, 1105-06 (10th Cir. 2008).

**Background**

The following statement of facts is derived from the record before the Court viewed in the light most favorable to Plaintiff:

At 11:41 a.m., on January 16, 2013, Plaintiff was booked into the Curry County Detention Center ("CCDC") on charges of residential burglary, possession of drug paraphernalia, and larceny. At the time of his booking, CCDC's classification specialist, Officer Naomi Gutierrez, performed an initial custody assessment. The purpose of the classification system is to separate potential victims from potential predators. CCDC's classification system works when booking officers are properly trained to know what to ask and what to look for, and correctly do their jobs. Officer Gutierrez, taking into account the severity of the current charges, Plaintiff's serious offense history, prior felony charges and alcohol/drug abuse, scored Plaintiff as a "9," and classified him at the "maximum" custody level.

On January 18, 2013, Lt. Wagner and Sgt. Michael Romero decided to place Plaintiff in Pod 7, CCDC's maximum custody pod.  During previous commitments, Plaintiff had been assigned to the trustee pod or a minimum custody pod.  When Plaintiff was told that he was assigned to a maximum security pod, Plaintiff proposed that once again he be assigned to a lower security pod.  Sgt. Romero responded  "No.  You'll go where I tell you to go." As Plaintiff was being escorted to Pod 7, Plaintiff encountered Defendant Sandoval, who at that time was CCDC's Administrator.  Plaintiff asked Sandoval if he could be placed in a minimum custody pod.  She responded that she would "get to it when she can."

Plaintiff was placed in a four-man cell with two other inmates, Alex Romero and Damian Martinez.  Both Romero and Martinez had been classified at the maximum custody level.  Martinez had been booked into CCDC on January 14, 2013, following his arrest on a misdemeanor charge of receiving  property obtained through the unlawful use of a credit card, NMSA 1978 § 30-16-36, and pursuant to warrants for contempt of court and failure to appear.  During previous commitments, Plaintiff had observed Martinez being held in the maximum custody pod.  Martinez was known to be aggressive and to habitually fight other inmates.  Martinez's classification assessment form reflects "one or more major disciplinary reports and/or time in segregation" and abuse of methamphetamine "resulting in social, economic, or legal problems."  The classification specialist scored Martinez as a "14."  Martinez and Romero appeared to get along. Plaintiff overheard Martinez tell Romero that Martinez was in withdrawal from either

heroin or methamphetamine and that Martinez wanted to be alone. Plaintiff and Martinez did not speak to one another.

Around 3:45 p.m. on January 18, 2013, Plaintiff spoke to Officer Troy Hunt. Plaintiff proposed that Officer Hunt move him to a minimum security pod "before [Plaintiff] had any problems in [Pod 7]." Officer Hunt asked "Well, what's the problem?" Plaintiff responded that he was having problems with Martinez. Officer Hunt told Plaintiff that he did not have authority to transfer Plaintiff, but he would "see what he can do." CCDC policies in effect since May 2001 required that the on-duty shift supervisor approve any reclassification and transfer. Officer Hunt was unable to get a supervisor to approve the transfer.

Around 6:45 p.m., Officer Hunt returned to Pod 7 to conduct a head count. In Officer Hunt's presence, Martinez cold-cocked Plaintiff, viciously striking him in his right eye. Plaintiff was knocked unconscious and experienced a seizure. Plaintiff woke up three hours later in Plains Regional Medical Center.

On January 18, 2013, 212 male inmates were housed in CCDC. CCDC's original capacity was 208 inmates. Eight corrections officers were on duty on January 18, 2013, six of those officers working overtime. Pod 7 had space for 24 inmates; on January 18, 2013, there were 12 inmates housed in Pod 7.

**Federal Claims**

The Eighth Amendment imposes on prison officials a duty to protect convicted inmates from violence at the hands of other inmates. *Howard v. Waide*, 534 F.3d 1227,

1236 (10th Cir. 2008). The Fourteenth Amendment Due Process Clause[1] affords pretrial detainees such as Plaintiff the same protection the Eighth Amendment affords convicted inmates. *Bass v. Pottawatomie County Pub. Safety Ctr.*, 425 Fed. App'x 713, 719 (10th Cir. 2011). To establish liability based on conditions of confinement, an inmate first must show that the conditions of his confinement presented an "objective 'substantial risk of serious harm.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The objective component requires consideration of both the severity of the potential harm and the likelihood that such serious harm will occur. *See Brown*, 398 F.3d at 910 (observing that the objective component of *Farmer's* two-prong test includes a requirement that "that there was a substantial risk beforehand that the serious harm might actually occur"); *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (the risk of injury should be such that there is "'a strong likelihood, rather than a mere possibility'" of serious injury (quoting *Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989)). Inmate-on-inmate violence clearly is an objectively "serious harm." *Imani v. Bentley*, 2006 WL 1722429 *6 (E.D. Wis. 2006) ("A beating suffered at the hands of a fellow inmate 'clearly constitutes serious harm.'") (quoting *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005. Second, an inmate must show that prison officials had subjective knowledge of the substantial risk of serious harm and nevertheless disregarded that risk under circumstances amounting to recklessness as defined in the criminal law. *Id.* 839-40. "To be deliberately indifferent, the defendant 'must both be aware of facts from which the inference could be drawn that a

---

[1] Plaintiff's Complaint also refers to equal protection. The Court is at a loss to discern a plausible equal protection claim based on the facts alleged in Plaintiff's Complaint.

substantial risk of serious harm exists, and he must also draw the inference.'" *Goss v. Bd. of County Cm'rs of Creek County*, __Fed. App'x__, 2016 WL 1638086 *8 (10th Cir. April 26, 2016) (quoting *Farmer*, 511 U.S. at 837).

The Court concludes that in view of evidence of Martinez's history of fighting while confined in CCDC, a reasonable jury could find that Martinez presented a substantial risk of serious harm to other inmates. Plaintiff has come forward with sufficient evidence to withstand summary judgment as to the objective prong.

Plaintiff's case hangs up on the second, subjective prong. Lt. Wagner and Sgt. Romero made the actual decision to place Plaintiff in Pod 7 with Martinez. Defendants Sandoval and Pyle cannot be held vicariously liable for the acts of Lt. Wagner and Sgt. Romero. *See Lesley v. Whetsel*, 110 Fed. App'x 851, 853 (10th Cir. 2004). Plaintiff must establish at trial that Defendants Sandoval and Pyle *personally* were deliberately indifferent to a substantial risk of serious physical harm to Plaintiff.

Here, Plaintiff's own evidence establishes that the purpose of CCDC's classification system is to separate potential victims from potential predators, and that CCDC's classification system works when booking officers are properly trained to know what to ask and what to look for, and correctly do their jobs. Given this evidence, no reasonable jury could find that CCDC's classification system is so flawed that Defendants' reliance upon it would have amounted to deliberate indifference to inmate safety. To the extent Plaintiff challenges the classification system as applied to him, he has not come forward with evidence that would permit a reasonable jury to find that Defendants Sandoval and Pyle actually were aware that Plaintiff had been assigned to the

same cell as Martinez. Without such evidence, no reasonable jury could find that Defendants Sandoval and Pyle were aware of facts from which they should have inferred that Plaintiff's cellmate presented a substantial risk of serious harm to Plaintiff. *See Losey v. Warden*, 521 Fed. App'x 717, 719 (10th Cir. 2013).

Plaintiff's failure to establish that an individual Defendant violated his rights is fatal to his § 1983 claim against the Board of County Commissioners. *Trigalet v. City of Tulsa*, 239 F.3d 1150 (2001).

Plaintiff also claims that "[t]he beating was totally preventable had there not been an unnecessary level of bureaucracy preventing Plaintiff from being moved to another cell." [Doc. 42 at 15] The record includes CCDC's policies governing classification. [Doc. 39-4] These policies generally vest the authority to reclassify or transfer inmates in the Administrator, the "On-duty Shift Supervisor," or their "designees." Whether this policy creates a substantial risk of serious harm to inmates appears to the Court to turn on how readily available were supervisors or their designees. Here, the evidence merely establishes that in Plaintiff's case, Officer Hunt "was not able to get a sergeant to approve the transfer." The reason that Officer Hunt was unable to obtain approval does not appear in the record.

The Court will accept for purposes of argument that a jury could find that the transfer policy was a but-for cause of Plaintiff's injury—*i.e.*, that Officer Hunt would have removed Plaintiff (or Martinez) from the cell they shared but for the transfer policy requiring a supervisor's approval. However, a causal connection by itself will not establish liability: Plaintiff must show "the requisite fault"—deliberate indifference—as

well as causation. *Shue v. Laramie County Detention Ctr.,* 594 Fed. App'x 941, 944 (10th Cir. 2014).

The policy requiring supervisor approval for a transfer was adopted in May 2001. The incident involving Martinez and Plaintiff is the only instance documented in the record where the policy of requiring supervisor approval for a transfer arguably was a but-for cause of harm to a CCDC inmate. On the record before the Court, no reasonable jury could find that Defendants had knowledge of facts from which they should have inferred that the policy of requiring supervisor approval for a transfer created a substantial risk of serious harm to CCDC inmates. *See Wallace v. Doe*, 512 Fed. App'x 141, 144 (3d Cir. 2013) (noting lack of evidence of prior incidents from which defendants could have drawn an inference of a substantial risk of serious harm); *accord Anderson v. Wilkinson*, 440 Fed. App'x 379 (5th Cir. 2011).

Plaintiff complains about "the abysmal state of affairs at the detention center including, overcrowding,[2] understaffing,[3] no supplies, leaky roof, mold and other systemic problems." [Doc. 42 at 18] Assuming, *arguendo*, that these conditions existed on January 18, 2013, Plaintiff has not come forward with evidence that would permit a reasonable jury to find than any of the "systemic" conditions cited by Plaintiff was the cause of Martinez's attack.[4]

---

[2] Uncontroverted evidence establishes that Pod 7 was a 24-man unit and that on January 18, 2013, 12 men were housed in Pod 7.
[3] Officer Hunt stated that "generally" there was a 100/1 ratio of inmates to officers. Other evidence establishes that on January 18, 2013, eight officers were on duty and 212 male inmates were housed in the CCDC.
[4] Plaintiff's assertion that "due to the shortages of staff and over-crowding, the correctional officer was not able to get authorization from a sergeant before the beating" [Doc. 42] is not supported by the evidence he cites as support. The reason why Officer Hunt was unable to obtain authorization from a supervisor does not appear in the record.

**State-law Claim**

Plaintiff also asserts a claim pursuant to the New Mexico Tort Claims Act, NMSA 1978, §§ 41-1-1 *et seq.*

"When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir. 1998) (citing 28 U.S.C. § 1367(c)(3)). Having dismissed Plaintiff's federal claims, the Court declines to exercise jurisdiction over Plaintiff's remaining state-law claim.[5]

**WHEREFORE, IT HEREBY IS ORDERED** that Defendants' *Motion for Summary Judgment* [Doc. 38] is **granted** as to Counts I through IV, which Counts are **dismissed with prejudice**;

**IT FURTHER IS ORDERED** that Defendants' *Motion for Summary Judgment* [Doc. 38] is **denied** as to Count V, which Count is **dismissed without prejudice**.

So ordered this 30th day of November, 2016.

_____
M. CHRISTINA ARMIJO
Chief United States District Judge

---

[5] 28 U.S.C. § 1367(d) provides Plaintiff with a 30-day window within which to file Count V in state court.